BARRETT S. LITT, SBN 45527
blitt@mbllegal.com
LINDSAY BATTLES, SBN 262862
lbattles@mbllegal.com
RODRIGO PADILLA, SBN 339523
rpadilla@mbllegal.com
McLANE, BEDNARSKI & LITT, LLP
975 E. Green Street
Pasadena, California 91106
Telephone: (626) 844-7660
Fax: (626) 844-7670

JOVAN BLACKNELL, SBN 237162
jovan@fight4justice.com
DEION BENJAMIN, SBN 332578
deion@fight4justice.com
KELLEN DAVIS, SBN 326672
kellen@fight4justice.com
Law Office of J. Blacknell
200 Corporate Pointe, suite 495
Culver City, CA 90230
Telephone: (310) 469-9117
Fax: (310) 388-3765

*Attorneys for* Sammy Newman and Antonio Rincon,
individually and as class representatives

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMMY NEWMAN and ANTONIO RINCON, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; SHERIFF ALEX VILLANUEVA, individually and in his official | **COMPLAINT FOR DAMAGES**<br><br>(1) §1983 Fourth Amendment – Unreasonable Search & Seizure<br><br>(2) §1983 Supervisory Liability<br><br>(3) §1983 *Monell*<br><br>(4) California Civil Code §52.1 (Bane Act)<br><br>(5) California Government Code §820 (Negligence and Assault) |

| | |
|---|---|
| capacity, BRENDAN CORBETT, SERGIO ALOMA, CAPTAIN MATTHEW VANDER HORCK, CAPTAIN E. KIM, and DOES 1-20, inclusive<br><br>Defendants. | (6) Article 1, §§1 And 13 Of The California Constitution<br><br>**DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. This is a proposed class action lawsuit arising from objectively unreasonable and unnecessarily intrusive strip searches / visual body cavity searches conducted by the Los Angeles Sheriff's Department (LASD) on September 7, 2021, at the Men's Central Jail (MCJ). The searches were conducted in a manner that involved gratuitous privacy violations and outrageously threatening behavior by deputies, none of which was warranted by any security exigency that may have initially justified the searches.

2. On September 7, 2021, in response to a purported security exigency, the LASD conducted searches of all prisoners housed in the MCJ 2500 and 2700 living units. The searches began with strip searches, during which each prisoner was required to completely disrobe and submit to a thorough visual body cavity (VBC) inspection, including an inspection of their genital area and rectum. During the entire VBC process, deputies kept their guns directly pointed at prisoners. After the VBC searches concluded, prisoners were not permitted to replace any clothing, even boxer shorts. Instead, they were required to remain completely nude, with their hands zip-tied behind their back, in the presence of dozens of persons not involved with the search, including LASD deputies (both men and women), medical personnel, and other staff.

3. After zip-tying each prisoner, deputies forced them to walk barefoot and completely naked through the facility across filthy hallways to holding tanks or lines where they waited to be searched in body scanning devices. They were

required to wait naked to proceed through body scanners despite the fact that they had already been subjected to a VBC search and despite the fact that there is no need for clothing to be removed before a body scanner search. Body scanners are used by the LASD permit jail staff to see contraband secreted under clothing and even secreted in body cavities.

4. From the time the visual body cavity searches were completed, most prisoners were required to remain completely nude, with their bodies entirely exposed to onlookers for between 30 minutes and several hours, depending on how quickly they were routed through body scanners.

5. Regardless of any security threat justifying searches in the first instance, the manner in which these searches were conducted amounted to an outrageous and gratuitous invasion of privacy, in violation of the Fourth Amendment and California law. After each prisoner had submitted to a visual body cavity inspection, they no longer presented a potential security threat and therefore there was no legitimate security concern to justify requiring them to remain naked and completely exposed to dozens of person not involved in the searches.

## II.   JURISDICTION AND VENUE

6. Plaintiffs present federal claims for relief under 42 U.S.C. §1983. Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343. Plaintiffs' state law claims are so related to their federal law claims that they form part of the same case or controversy. Accordingly, supplemental jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. §1367.

7. Plaintiffs' claims arise out of acts of the Los Angeles County Sheriff's Department in the County of Los Angeles, State of California. Accordingly, venue is proper within the Central District of California.

8. Both Plaintiffs/Class Representatives timely filed class administrative claims with the County of Los Angeles pursuant to Cal. Gov't Code §910. The

claims were denied on April 19, 2022 and May 2, 2022.

### III. PARTIES

9. Plaintiffs-Class Representatives Sammy Newman and Antonio Rincon were prisoners who were subjected to unnecessarily intrusive strip and body cavity searches on September 7, 2021 at the Men's Central Jail. Plaintiffs seek damages on behalf of themselves and all others similarly situated for the unconstitutional manner in which they were searched in Men's Central Jail.

10. Defendant County of Los Angeles (hereafter "County") is a county of the State of California duly organized under the laws of the State of California. The agency within Los Angeles County responsible for operating Men's Central Jail is Los Angeles County Sheriff's Department (hereafter "LASD"), a public County-operated agency organized and existing under the laws of the State of California in the County of Los Angeles.

11. Defendant Alex Villanueva (hereafter "Villanueva") is the Sheriff of Los Angeles County, and is the final policymaker for the LASD. He is sued in his official and individual capacities.

12. Supervisory LASD defendants include: (1) Defendant Brendan Corbett, the Assistant Sheriff of LASD Custody Operations; (2) Defendant Sergio Aloma, Chief of the LASD Custody Division; (3) Defendant E. Kim, Captain of Men's Central Jail; (4) Defendant Matthew Vander Horck, Captain of Men's Central Jail. Each of these supervisory LASD defendants were responsible for the care, custody and control of all persons incarcerated within Men's Central Jail. Each of these defendants were likewise responsible for the implementation of policies and procedures governing Men's Central Jail and for the management of Men's Central Jail, including for the selection, promotion, supervision, training, discipline and retention of agents and employees working within the jail.

13. Defendants Corbett, Aloma, Kim and Vander Horck are sued in their individual capacities, as supervisors for their own culpable action or inaction in the

training, supervision or control of subordinates, or acquiescence in the constitutional deprivations of which this complaint alleges, or for conduct that showed reckless or callous indifference for others. Defendants' affirmative conduct involves their knowing failure to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which they knew or reasonably should have known would cause others to inflict injuries on Plaintiffs and class members.

14. Plaintiffs further allege that, at all times relevant herein, that Defendant Sheriff Alex Villanueva and the LASD Supervisory Defendants participated in, approved, and/or ratified the unconstitutional or illegal acts that occurred within LASD jails which are complained of herein.

15. Plaintiffs are unaware of the true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive. DOES 1 through 20 were employees of the County, including but not limited to managerial employees, supervisory personnel, deputies and civilian staff of the County and were at all relevant times acting in the course and scope of their employment and agency. Plaintiffs allege that each of the Defendants named as a "DOE" was in some manner responsible for the acts and omissions alleged herein, and Plaintiffs will ask leave of this Court to amend the Complaint to allege such names and responsibility when that information is ascertained.

16. Plaintiffs are informed and believe, and thereupon allege that, at all times relevant herein, the individual Defendants, and each of them, were the agents, servants and employees of their respective employers (Defendant County of Los Angeles) and were acting at all times within the scope of their agency and employment with the knowledge and consent of their principals and employers. At all times herein, Defendants, and each of them, were acting under the color of state law.

## IV. STATEMENT OF FACTS

17. On the morning of September 7, 2021, the LASD initiated a

"lockdown" due to a purported security threat at MCJ. The lockdown affected various housing units, including, but not limited to units 2700 and 2500. When the lockdown began, some pprisoners were already locked in their cells. Others had already gone to the yard and were confined to the yard.[1] Regardless of their location at the beginning of the lockdown, all prisoners on units 2500 and 2700 were subjected to the same unconstitutional search procedures.

### A. VISUAL BODY CAVITY INSPECTIONS

18. After the facility went on lockdown, groups of officers began gathering on the 2500 and 2700 units. The officers were armed with guns, which many prisoners believed to be loaded. Officers eventually ordered prisoners to exit their cells individually or in groups of two to five at a time, either completely naked or wearing only boxers and shower shoes.

19. After exiting their cells, the prisoners were forced to endure a terrifying and highly-intrusive visual body cavity search, at gunpoint, and in the view of numerous persons not necessary to the search, including deputies and staff of the opposite gender. Deputies required each individual to remove all clothing (if any) and complete a thorough visual body cavity search, which included inspection of their pubic area and rectum, using a cough-and-squat and/or bend/spread procedure. Deputies pointed weapons (guns) directly at their bodies for the duration of the search. After the visual body cavity inspections were completed, deputies handcuffed the prisoners using zip-ties, requiring them to remain entirely naked, without even replacing their boxers. At this point, there was no reasonable basis to believe that these individuals were secreting weapons or contraband on their body, and therefore no reason for concern that they posed a security threat. Accordingly, there could be no legitimate penological justification for requiring

---

[1] Most prisoners from the 2500-B, 2500-C and 2500-D units were confined to the yard when the lockdown began. Prisoners from the 2700 unit and 2500-A unit were locked in their cells along with some prisoners from the 2500-B, 2500-C and 2500-D units.

them to remain naked and exposed to dozens of other prisoners and deputies.

20. At the time the facility went on lockdown, some prisoners housed in the 2500 unit were strip searched and then taken to the yard for outdoor recreation time.[2] Prisoners on the yard were searched significantly later in the day (or evening), but they endured essentially the same search process. After the facility went on lockdown, most prisoners assigned to module 2500 B, C and D were left on the yard without breakfast, lunch, or prescribed medication. Around dusk, they were provided with two burritos. At approximately midnight, they were subjected to the same highly intrusive search procedure as those who had been removed from their cells. As with the groups searched outside of their cells, these individuals posed no safety or security threat after they had submitted to a visual body cavity inspection. There was no penological justification for requiring them to remain completely nude, without permitting them to replace even their boxer shorts.

### B. GRATUITOUS EXPOSURE OF PRISONERS' BODIES FOLLOWING THE VISUAL BODY CAVITY INSPECTIONS

21. After completing the visual body cavity inspections, officers escorted groups of prisoners at gunpoint, completely naked with no shoes, through long hallways, onto moving escalators, and eventually to the court line body scanners on the first floor. On the way to the scanners, deputies forced the prisoners to walk barefoot on filthy floors. Deputies prodded prisoners with guns (including on escalators with hands tied behind their back), spit on them, and made terrifying and offensive remarks about their bodies. Some officers pointed gun lasers at the prisoners to make them flinch.

22. During this process, which took as long as 45 minutes to move through the facility, prisoners' naked bodies were exposed to dozens of law enforcement and other staff, including female deputies and female staff, as well as

---

[2] On information and belief, it is MCJ's practice to require prisoners to submit to strip searches before entering the recreation yard.

other prisoners who were also naked and handcuffed. Some prisoners sustained injuries given their lack of foot protection, the restraint of their hands behind their backs and the force with which the deputies jabbed them forward.

23. Upon arrival at the court line area, many prisoners were confined to holding cells, naked, with their hands zip-tied behind their backs, while waiting to pass through the body scanners for a second search. Some groups bypassed the holding cells, but were still required to stand in long lines waiting to pass through the body scanners. They waited in the holding cells and lines for up to several hours. In holding cells and lines, prisoners were crowded close together and not permitted to replace their COVID face masks during this process. Because they remained zip tied, they were unable to use toilet facilities. Some officers taunted prisoners in the holding cells, attempting to scare them with tasers.

24. After the scanners, many individuals received boxers and were freed from the zip-tie handcuffs. Some remained naked and/or zip tied while they were taken to second holding cells, submitted to additional searches, made to stand against the wall and/or taken to a separate room to be interviewed.

25. After the searches concluded, deputies then brought prisoners to various locations (law library, day room, cells) where they waited for many hours, into the early hours of September 8th. At this point they received a meal, which was for most, their only meal of the day. Most were provided only a pair of boxers, but no additional clothing. They had to cover themselves with trash bags to shield themselves from the cold.

26. When they finally returned to their cells, all of their property, legal paperwork, mattresses and linens had been ransacked and thrown out of their cells. Some cells were soiled with dog feces and urine. Individuals were required to sleep on bare metal slabs in only their boxers. Those who tried to retrieve legal paperwork were punished with disciplinary confinement. Some prisoners did not receive breakfast on Wednesday September 8th and many didn't receive new

clothing, medicine or an opportunity to shower until later on September 8th, 9th or later.

## V.    CLASS REPRESENTATIVE ALLEGATIONS

26.    Plaintiffs, Sammy Newman and Antonio Rincon bring this lawsuit under 42 U.S.C. §1983, seeking class-wide relief pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), on behalf of themselves and all other persons similarly situated.

27.    On September 7, 2021, Sammy Newman was housed in 2500-C. He was ordered out of his cell, forced to remove all clothing, including his boxers, and required to submit to a thorough visual body cavity inspection in the presence of numerous deputies. After he completed the visual body cavity search, deputies zip-tied his hands behind his back and brought him to a hallway where he was forced to wait, standing naked, in the presence of deputies, officers and 10-20 other prisoners. After waiting in the hallway, the group of prisoners were walked through the facility to the body scanner, where they were scanned one-by-one. The process of walking through the facility, waiting in long lines at the scanners, and completing the body-scanner search took approximately 45 minutes. Following the body scanner, Mr. Newman was escorted to Cell 39.

28.    On September 7, 2021, Antonio Rincon was housed in 2500-C (23). Around 6:00 – 6:30 a.m., deputies prepared his housing unit for transfer to the recreation yard. Before entering the yard, each prisoner was required to submit to a visual body cavity inspection that utilized both the squat-and-cough procedure and "bend-and-spread" technique. After the search, prisoners re-dressed themselves and went to the yard. They remained on the yard for the rest of the day and into the night.

29.    At around 10:00 – 11:00 p.m., numerous officers appeared on the recreation yard in riot gear and shields, aiming gun lasers at the prisoners. Their name badges were covered with tape. They forced all of the prisoners to remove their clothing and submit to a visual body cavity inspection that utilized both the

squat-and-cough procedure and "bend-and-spread" technique. After Mr. Rincon completed the visual body cavity search, deputies zip-tied his hands behind his back. He was not permitted to replace boxers or any other clothing at that time. He was forced to walk through the facility with a group of prisoners, completely nude to the body scanner, where the prisoners were scanned one-by-one. During the walk, there were at least 50-100 deputies present, as well as other jail and medical staff. After completing the body scanner search, deputies escorted the group to the law library where they waited until 3:30 a.m. – 4:00 a.m. to return to their cell.

## VI. PROPOSED DAMAGES CLASSES

30. Plaintiffs propose a single damages class, "**9/7/21 Mass Search Damages Class,**" defined as follows:

> All MCJ prisoners housed in units 2500, 2700, and elsewhere, who, on September 7, 2021, were subjected to visual body cavity inspections, after which they were required to remain nude, with their hands zip-tied behind their back, and exposed to persons unnecessary to the search.

31. The proposed damage class satisfies the criteria of FRCP 23(b)(3). It is sufficiently numerous, is represented by plaintiffs with typical claims, and presents common questions of law and fact.

32. The legal and factual issues common to this class include: (1) whether the search procedure used on September 7, 2021 violated class members' Fourth Amendment rights, including whether prisoners were unnecessarily and unreasonably required to expose their bodies to other persons after jail staff had conducted visual body cavity inspections; (2) whether LASD's deficient policies, training, supervision caused the violation of class members' Fourth Amendment rights; and (3) whether the search procedure used on September 7, 2021, violated class members' rights under California law or the California Constitution, and therefore satisfies the requirements for a claim under California Civil Code §52.1 (Bane Act).

33. Plaintiffs do not know the exact number of persons subjected to these search procedures. Through preliminary investigation, Plaintiffs' counsel has confirmed that at least 100 persons were subjected to the previously described unreasonable search procedures on September 7, 2021.

33. Plaintiffs satisfy the typicality requirement of Rule 23(a)(3) as their claims are typical of the class. Plaintiffs' claims are based upon the same or similar legal theories as the claims of the class members. As detailed in §V, above, Plaintiffs were searched during the 9/7/21 incident and they were subjected to the same conditions and unlawful practices as other class members, including unconstitutionally intrusive and degrading strip and cavity searches in open areas where they were observed by other inmates and persons not involved in the search, including members of the opposite sex. Plaintiffs were kept naked and zip tied for a prolonged period of time after LASD determined that they posed no legitimate safety or security threat.

## VII. CAUSES OF ACTION

**FIRST CAUSE OF ACTION: §1983 FOURTH AMENDMENT VIOLATION**

*Against County of Los Angeles, Villanueva, Corbett, Aloma, Kim, Vander Horck, and DOES 1-20*

34. Plaintiffs incorporate the allegations of the preceding and subsequent paragraphs as if fully set forth herein.

35. Gratuitous invasions of privacy violate the Fourth Amendment. Absent a legitimate reason, individuals maintain a right to bodily privacy, and in particular, the right not to have their genitals exposed to others. Here, Defendants violated class members Fourth Amendment rights by subjecting them to demeaning and highly intrusive searches that involved requiring them to remain entirely nude, with their hands zip-tied behind their back and bodies fully exposed to onlookers, for prolonged periods of time after deputies had conclusively determined that no weapons or contraband were secreted on their body, and therefore, that they posed no legitimate safety or security threat.

36. The search procedures used on September 7, 2021 were not reasonably related to a legitimate penological interest, but instead represented a highly exaggerated response to a purported security concern. The search procedure was objectively unreasonable in that, even after completing visual body cavity inspections to confirm that no weapons were secreted on their bodies, deputies paraded prisoners through the jail facility, entirely nude (and barefoot), with hands zip-tied behind their back, and in the view of dozens of others, including prisoners, deputies and civilian jail staff (including deputies and jail staff of the opposite gender). This procedure represented an outrageous and entirely exaggerated response to whatever purported safety concern initially prompted the searched. Once jail staff determined that each prisoner was free of weapons and contraband, and thus presented no safety concern, there remained no sufficient security interest to justify the exposure of prisoners genitalia to other persons.

37. In subjecting Plaintiffs and class members to the unnecessary, demeaning, and outrageous intrusive strip procedure, Defendants, and each of them, violated Plaintiffs' and class members' rights to be secure in their persons against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

38. The aforementioned acts of Defendants proximately caused Plaintiffs to be deprived of their rights as stated above, thereby entitling Plaintiffs and the class to damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION: §1983 SUPERVISORY LIABILITY – FAILURE TO TRAIN, SUPERVISE & TAKE CORRECTIVE MEASURES**

*Against Defendants Villanueva, Corbett, Aloma, Kim, Vander Horck, and supervisory DOES 1-20*

39. Plaintiffs reallege all foregoing and subsequent paragraphs as if fully set forth herein.

40. Plaintiffs are informed and believe and thereon allege that prior to the incident alleged herein, Defendants Sheriff Alex Villanueva, Supervisory LASD

Defendants, and supervisory DOES, acted under the color of their authority as supervisory personnel, and failed in the following responsibilities: to maintain appropriate procedures for responding to security incidents, to maintain appropriate procedures for conducting constitutionally permissible strip searches, to ensure proper supervision of deputies responsible for conducting strip searches, and to ensure that strip searches/visual body cavity searches complied with statutory and constitutional standards. The failure to correct such failures was a moving force behind the violation of Plaintiffs' and class members' Fourth Amendment Rights.

41. Defendant Alex Villanueva, LASD supervisory defendants, and supervisory DOES participated in the 9/7/21 searches by providing direct oversight of subordinate personnel, including authorizing their plan for conducting strip searches. Defendant Alex Villanueva, LASD supervisory defendants, and supervisory DOES were responsible for ensuring that the searches conformed to constitutional standards.

42. Plaintiffs are informed and believe that supervisory Defendants had a duty to train and instruct their subordinates to prevent similar acts, but failed to take steps to properly train, supervise, investigate, or instruct personnel in the conduct of strip searches.

43. Each of these supervisory Defendants are liable on the basis that they were either personally involved in the violation of Plaintiffs' and class members' rights to be free from unreasonable searches or because there was a sufficient causal connection between their wrongful conduct and the violation of class members' rights. *See Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisory liability requires either personal involvement or a sufficient causal connection between the supervisor's conduct and the constitutional violation); *Mackinney v. Nielsen*, 69 F.3d 1008 (9th Cir. 1995).

44. As a legal result of the conduct of Defendants Villanueva, LASD supervisory defendants, and supervisory DOES, as described above, Plaintiffs were damaged as alleged herein and as set forth above.

**THIRD CAUSE OF ACTION: § *MONELL* CLAIM FOR VIOLATION OF FOURTH AMENDMENT RIGHTS**

*Against Defendant County of Los Angeles and Alex Villanueva in his Official Capacity, and DOES 1-20*

45. Plaintiffs incorporate the allegations of the preceding and subsequent paragraphs as if fully set forth herein.

46. Entity defendant County of Los Angeles possessed the power and authority to adopt policies and prescribe rules, regulations and practices governing the response to safety and security exigencies, procedures for conducting strip searches / visual body cavity searches, and procedures for ensuring constitutionally and statutorily required privacy protections during the conduct of strip searches.

47. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendant County of Los Angeles, through the Los Angeles Sheriff's Department maintained, enforced, ratified, acquiesced in, and/or applied constitutionally deficient policies, customs and/or practices regarding strip searches, visual body cavity searches and responses to security exigencies.

48. Plaintiffs are informed and believe and thereon allege that, during all or portions of the period relevant to this case, Defendant County of Los Angeles, through the Los Angeles Sheriff's Department, failed to adopt and implement systems, policies, practices, customs, training, supervision, or discipline in areas where the need for such things to occur was obvious. Defendant had: a) deficient stated, written policies; and/or b) inadequate training and supervisions regarding, *inter alia*, the following issues:

    i. Appropriate response to security exigencies within the jail facility;

    ii. Procedures for conducting searches in response to security exigencies;

      iii.    Adopting policies to ensure that searches conform to constitutional and statutory requirements for protecting the privacy of prisoners during strip searches / visual body cavity searches;

      iv.    Prohibiting threatening and/or abusive conduct during the conduct of strip searches / visual body cavity searches;

49. Plaintiff are informed and believe and thereon allege that prior to the incident alleged herein, Defendants Sheriff Alex Villanueva, and supervisory DOES 1-10, acted under the color of their authority as supervisory personnel.

50. At all relevant times, Defendant Alex Villanueva and supervisory DOE defendants had final policymaking authority concerning the operation of LASD jail facilities, including all measures to maintain safety and security within the jails and to respond to safety or security concerns within the jails. In response to a security concern on September 7, 2021, Defendant Alex Villanueva and supervisory DOE defendants with final policymaking authority made a deliberate choice from various alternatives by directing jail staff to subject prisoners to unreasonable and unnecessarily intrusive strip searches / visual body cavity searches. These searches included requiring prisoners to remain nude, with their genitals exposed to dozens of other prisoners and correctional staff, with hands tied behind their backs, for protracted periods of time following the strip search / visual body cavity searches that eliminated any concern that they had secreted a weapon on their body.

51. On information and belief, Defendant Alex Villanueva and supervisory DOE defendants to whom he delegated final policymaker authority directed the September 7, 2021 mass searches including the manner in which they were conducted, authorized the manner of searches, and ratified the plan to conduct the searches in the unreasonable and dehumanizing manner in which they were performed.

52. The customs, policies, and/or practices of the Defendant County of Los Angeles were a moving force behind the constitutional violations sustained by

Plaintiffs and class members, entitling Plaintiffs and class members to compensatory damages according to proof.

53. As a legal result of the conduct of Defendants Villanueva and DOES 1-20, as described above, Plaintiffs were damaged as alleged herein and as set forth above.

**FOURTH CAUSE OF ACTION: CALIFORNIA CIVIL CODE §52.1 (BANE ACT)**
*Against Defendants Villanueva, Corbett, Aloma, Kim, Vander Horck, ,*
*and DOES 1-20*

54. Plaintiffs incorporate the allegations of the preceding and subsequent paragraphs as if fully set forth herein.

55. The unnecessary, demeaning, and outrageously intrusive strip and visual body cavity searches deprived Plaintiffs and class members of the protections afforded by provisions of federal constitutional and state constitutional and statutory law including, but not limited to rights protected under the Fourth Amendment to the United States Constitution; Article I, §§1, 7, 13, and 17 of the California state constitution; and California Penal Code §4030. Therefore, Plaintiffs and the class are entitled to bring suit and recover damages pursuant to Cal. Civ. Code §52.1(b). The highly intrusive search procedure, including the requirement that prisoners remain naked, zip-tied and fully exposed to onlookers during transport to holding cells and body scanners, were accomplished with specific intent and/or via threat, intimidation or coercion and/or threats of the same.

56. As a direct and proximate cause of the aforementioned acts, Plaintiffs and class members were damaged in an amount to be proven at trial but in any event not less than $4,000 per violation pursuant to the provisions of Civil Code §§52, 52(b) and 52(c).

57. The aforementioned acts of Defendants directly and proximately caused Plaintiffs to be deprived of their California constitutional rights as stated

above, thereby entitling Plaintiffs and class members to recover damages proximately caused by Defendants' wrongful acts.

### FIFTH CAUSE OF ACTION: GOVERNMENT CODE § 820

*Against Defendants Villanueva, Corbett, Aloma, Kim, Vander Horck, and DOES 1-20*

58. Plaintiffs incorporate the allegations of the preceding and subsequent paragraphs as if fully set forth herein.

59. Pursuant to Government Code § 820, a public employee is liable for injury caused by his act or omission to the same extent as a private person. The unnecessary, demeaning, and outrageously intrusive strip and visual body cavity searches, as well as the forcing of plaintiffs and class members to remain naked, zip-tied, and fully exposed to onlookers during transport and holding, and taunting/prodding them with rifles during the search and transport process, were the result of acts and omissions of LASD employees. These acts and omissions were carried out in the scope of their employment and would have given rise to causes of action against them based on negligence and assault.

60. As a legal result of Defendants' conduct, as described above, Plaintiffs were damaged as alleged herein and as set forth above.

### SIXTH CAUSE OF ACTION: ARTICLE 1, §§1 AND 13 OF THE CALIFORNIA CONSTITUTION [PRIVACY/FOURTH AMENDMENT ANALOGUE]

*All Defendants*

61. Plaintiffs incorporate the allegations of the preceding and subsequent paragraphs as if fully set forth herein.

62. The unnecessary, demeaning, outrageous, and intrusive strip and body cavity searches to which Plaintiffs and class members were subjected violated Plaintiffs' rights not to be subjected to invasion of their fundamental privacy interests, as guaranteed by Article I, §1 of the California Constitution; and to be secure in their persons against unreasonable searches and seizures, as guaranteed

by Article I, §13 of the California Constitution.

63. The aforementioned acts of Defendants proximately caused Plaintiffs to be deprived of their rights as stated above, thereby entitling Plaintiffs and the class to damages in an amount to be proven at trial.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the class members they represent, request the following relief:

1. General and special damages according to proof;

2. As against the individual Defendants only, punitive damages according to proof;

3. In addition to actual damages, statutory damages as allowed by law, including Penal Code §4030 and treble damages under California Civil Code §§52 and 52.1;

4. Attorneys' fees and costs under 42 U.S.C. §1988; California Civil Code, §§52(b)(3), 52.1(i); California Code of Civil Procedure §1021.5 and whatever other statute or law may be applicable; and

5. The costs of this suit and any such other relief as the Court finds just and proper.

Dated: May 20, 2022         Respectfully submitted,

                                             LAW OFFICE OF J. BLACKNELL
                                             MCLANE, BEDNARSKI & LITT, LLP

                                             By:*/s/ Barrett S. Litt*
                                             Barrett S. Litt
                                             Lindsay Battles
                                             Rodrigo Padilla
                                             Jovan Blacknell
                                             Deion Benjamin
                                             Kellen Davis
                                             *Attorneys for Plaintiffs*
                                             SAMMY NEWMAN and ANTONIO RINCON, individually and as class representatives

## JURY DEMAND

Trial by jury of all issues is demanded.

Dated:  May 20, 2022              Respectfully submitted,

                                                    LAW OFFICE OF J. BLACKNELL
                                                    MCLANE, BEDNARSKI & LITT, LLP

By: */s/ Barrett S. Litt*
Barrett S. Litt
Lindsay Battles
Rodrigo Padilla
Jovan Blacknell
Deion Benjamin
Kellen Davis
*Attorneys for Plaintiffs*
SAMMY NEWMAN and ANTONIO RINCON, individually and as class representatives

19